[No. 11996-0-II. Division Two. March 19, 1990.]

WILLIAM SAMUEL JENSON, ET AL, *Appellants,* v. NEIL DAVID SCRIBNER, ET AL, *Defendants,* THE STATE OF WASHINGTON, *Respondent.*

*William J. Rutzick* and *Schroeter, Goldmark & Bender, P.S.,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Jon P. Ferguson, Assistant,* for respondent.

ALEXANDER, C.J.—William and Myra Jenson appeal a summary judgment order of the Kitsap County Superior Court dismissing their lawsuit against the State of Washington. We affirm.

On May 6, 1983, Neil Scribner was traveling southbound on State Route 3 near Bremerton. A witness observed Scribner "abruptly" changing lanes, "tailgating other vehicles" and "traveling at least 5 m.p.h. faster than the other traffic." According to the witness, Scribner appeared suddenly to hit his brakes and lose control of his vehicle during one of the lane changes. Scribner's vehicle collided with an oncoming vehicle driven by William Jenson. Within 2 hours after the accident, Scribner's blood alcohol level was determined to be .15 percent.

Jenson and his wife commenced this action against Scribner, the State of Washington and several other defendants. They alleged that the State was negligent in its design, construction and maintenance of SR 3 in the vicinity of the accident. Specifically, they claimed that the State negligently failed to install a barrier between the north- and southbound lanes. Such a barrier, they contend, would have prevented Scribner's vehicle from striking Jenson.

On September 28, 1987, the State filed a motion for summary judgment of dismissal. It argued that it was immune from liability and, alternatively, that the State's actions were not a proximate cause of the accident. The trial court granted the motion, concluding, as a matter of law, that the State's failure to install a barrier was not the proximate cause of the accident and William Jenson's injuries. The trial court did not address the immunity issue.

 In reviewing an order granting summary judgment, an appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Wilson v. Steinbach, supra*; CR 56(c). An appellate court accepts all facts as true and considers all facts and reasonable inferences in the light most favorable to the nonmoving party. *Wilson v. Steinbach, supra.* "While generally a question of fact is properly left to the jury, . . . when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." (Citations omitted.) *Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985). The appellate court may sustain a judgment on any ground established by the pleadings and supported by the evidence.[1] *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984).

We will focus our attention on the issue of the State's immunity because we believe it is determinative of this appeal. The State's immunity from suit for discretionary acts was discussed extensively in *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440

---

[1]Underlying this general rule is the assumption that the parties had a full and fair opportunity to develop facts relevant to the alternative grounds on which the affirmance is based. *Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 414, 553 P.2d 107 (1976). Where there is no such opportunity, the correct resolution of the appeal is remand and not affirmance. *Bernal v. American Honda Motor Co., supra.* Here, both the proximate cause and discretionary immunity issues were fully briefed and argued to the trial court by both parties.

(1965). There, the Supreme Court held that the State is immune from suit if the following four questions are answered affirmatively:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Evangelical United,* at 255. The State maintains that under the standards set forth in *Evangelical United,* it is immune from liability. Indeed, the Jensons concede in their reply brief that the State's decision concerning the installation of a barrier is a discretionary decision. Their argument is focused elsewhere. They contend that the manner in which the State implemented its discretionary decision, rather than the decision itself, falls outside the "cloak of immunity." The Jensons argue that the State negligently delayed construction of the barrier once the discretionary decision had been made and that this operational failing subjects it to liability.

In support of that argument, they cite *Stewart v. State,* 92 Wn.2d 285, 597 P.2d 101 (1979). There, the court held that the State did not have immunity for its negligent design of a lighting system on a freeway bridge, even though its decision to locate the bridge and to select the number of lanes for the bridge were discretionary acts for which there was immunity. The court concluded that once a governmental decision is made, that decision must be implemented without negligence. *Stewart,* 92 Wn.2d at 294–95.

The Jensons argue that, at the very least, there is a question of fact for the jury over whether an unreasonable delay occurred between the date the Legislature allocated

funds for the barrier project and the date the barrier was actually installed. We conclude that reasonable minds could only find that there was no unreasonable delay. The undisputed record discloses that the median barrier project for the area of SR 3 in question was proposed to the Transportation Commission by the Department of Transportation in August of 1981. The project was then proposed to the Legislature. The Legislature authorized expenditures for design and preliminary engineering for the 1981–83 biennium. Expenditures for construction were authorized for the 1983–85 biennium. In January 1983, design work for the project was completed and in May of 1983 the State advertised for bids. Construction of the median barrier was begun in June 1983 and it was in place by late August of that year.

The Jensons claim that funds for construction of the barrier were actually available to the Department in January of 1983 and that the project should have been commenced at that time. If it had been, they claim, the barrier would have been in place before the accident took place on May 6. This delay between January and June, they contend, was unreasonable. There is no support for this argument. Contrary to the Jensons' assertion, funds for construction were not available in January of 1983. The Transportation Department's budget, which included funds for the construction of the barrier in question, was not even signed into law until May 23, 1983. Laws of 1983, 1st Ex. Sess., ch. 53, § 37, p. 1865.[2] Consequently, construction funds were not available to the project until after the date of the accident.

■ The Jensons, for the first time in their reply brief, argue that the State was negligent in the manner in which

---

[2]Funds were appropriated "for the period ending June 30, 1985." Laws of 1983, 1st Ex. Sess., ch. 53, § 1, p. 1852. Because this budget does not designate the beginning of the "period" in which the funds were made available, the assumption is that the funds were available immediately since the bill became effective immediately. Laws of 1983, 1st Ex. Sess., ch. 53, § 37, p. 1865.

it collected accident data for use in planning highway projects and in reporting certain information. They contend that these are not discretionary functions for which there is immunity. According to the record, the Department of Transportation collects accident data on the state's highways and assembles this information into a "priority array" every 2 years. In 1978, a fatal accident occurred on SR 3 near where the incident with which we are here concerned occurred. The 1978 accident did not, however, appear in the priority array until 1980. This accident apparently influenced the Department to enhance the priority of the median barrier project for SR 3. The Jensons assert that had the State collected its data more frequently than every 2 years, the State would have learned of the accident earlier and, thus, would have perceived the need to establish a higher priority for this barrier project. In our view, data collection is merely a function of planning and is, thus, a part of the State decisionmaking process. It is not the implementation of a decision. *See Stewart v. State, supra.* As a result, it is a discretionary act for which there is immunity.

Affirmed.

REED and PETRICH, JJ., concur.