[No. 14256-2-II.   Division Two.   September 16, 1992.]

CHARTER TITLE CORPORATION, *Appellant*, v. CROWN
MORTGAGE CORPORATION, ET AL, *Defendants*,
NORTHWEST NATIONAL BANK, *Respondent.*

*Richard N. Johnson* and *Johnson, Vomacka & Lacey, P.S.,* for appellant.

*John R. Potter* and *Horenstein & Duggan, P.S.,* for respondent.

ALEXANDER, J. — Charter Title appeals from a summary judgment dismissing its action against Northwest National Bank for negligent failure to supply a missing endorsement on a check which Charter deposited into its account at Northwest. We affirm.

Charter Title Corporation acted as the escrow to close the sale of a house between third parties. As the escrow, Charter Title was to hold loan moneys from Crown Mortgage Corporation, which was financing the purchase. On December 31, 1987, Crown wrote a check on its checking account with Pacific First Federal to Charter Title for the loan proceeds in the amount of $52,678.

On January 4, 1988, an employee of Charter presented this check, along with 18 other checks, for deposit into its trust account at Northwest. Unfortunately, Charter had failed to endorse the check, and the teller at Northwest did not notice that the check was missing an endorsement. Later that day, the check was forwarded to the Federal Reserve System for collection although it was missing Charter's endorsement.

On that same day, without waiting for the check to clear, Charter disbursed the entire $52,678 by issuing checks to

the seller's mortgage holder and paying the closing costs. Soon thereafter, Northwest received a computer notification from the Federal Reserve that Pacific First was returning the check because Charter's endorsement was missing. The check arrived at Northwest on January 11, 1988, a full week after Charter had first deposited the check and distributed the proceeds. A Northwest employee immediately stamped the back of the check "endorsement guaranteed" and transmitted it back to the Federal Reserve for collection. Unfortunately, this was too late to be of assistance to Charter.

Coincidentally, January 11, 1988, was the day that the Internal Revenue Service chose to levy upon Crown's account at Pacific First Federal. Pacific paid over to the IRS an amount which rendered the balance of Crown's account insufficient to pay the check. Crown failed thereafter to deposit sufficient funds to make the check good and the check has never been paid.

Charter then brought this action in Clark County Superior Court against Northwest National Bank, among others, alleging that the bank had been negligent in failing to supply the missing endorsement or in not returning the check to Charter for endorsement. It contended that if the check had not been delayed for a week by Northwest's failure, the check would have cleared before the IRS levied on Crown Mortgage's account. Charter argued that Northwest had established a course of dealing whereby it routinely supplied any missing endorsements on checks deposited by Charter. This course of dealing was said to create a duty of care on the part of Northwest, which it breached by failing to supply Charter's missing endorsement on the $52,678 check from Crown Mortgage.

Northwest moved for summary judgment. The matter came on for hearing and the trial court ruled that neither RCW 62A.4-202(1) (which imposes a general duty of care on banks when, *inter alia*, sending items for presentment) nor RCW 62A.4-205 (which allows depository banks to supply missing endorsements in order to speed up the collection

process) creates an affirmative duty to put an endorsement guaranty stamp on unendorsed checks.

The trial court agreed in principle that in some circumstances, a course of dealing between the parties might create such a duty, but did not believe that Charter had presented sufficient evidence to raise such a factual issue in this case. At most, the trial judge indicated, the evidence showed that Northwest routinely supplied missing endorsements when unendorsed checks were returned by the Federal Reserve. Since that was precisely what Northwest had done here, there was no showing of any breach, and moreover, the check came back from the Federal Reserve too late to have saved Charter from its losses. The trial judge said:

> On these affidavits, there is no inference, reasonable or otherwise, that Northwest Bank *routinely* supplied Charter Title's endorsement before sending checks in to the Fed for deposit. Without that inference, Plaintiff has not made or demonstrated a duty, based upon routine course of conduct, such that the failure to inspect and endorse this particular check when it was deposited would yield liability. Insofar then as we're dealing with the failure to inspect and endorse upon deposit, the Motion for Summary Judgment is granted.

Charter then argued that it needed more time to conduct discovery in order to show a course of dealing whereby Northwest routinely supplied missing endorsements upon deposit. Charter represented that it would go through all its checks, find the ones that had been stamped "endorsement guaranteed", and see how many of these had also been stamped "returned for missing endorsement". Charter was confident that this would show that Northwest had in fact supplied the bulk of the missing endorsements "up front". The trial court granted Charter 10 days to produce this evidence.

A second hearing was held on August 17, 1990. However, Charter did not produce the promised checks at that hearing. According to Charter, it had been mistaken about how easy it would be to locate the checks. It said it did not have enough time to locate them and make the promised investi-

gation. Instead, Charter offered several new affidavits in support of its contentions. After considering those affidavits, the trial judge confirmed his prior ruling and said:

> First, the burden is on the Plaintiff to show this routine course of practice that's relied upon as establishing an implied contractual provision, which allegedly was violated when they didn't endorse the check prior to sending it to the Federal Reserve. Nothing in the old affidavits establishes a question of fact on that sort of routine course of conduct, nor does anything in the new affidavits . . . these new affidavits do not establish even an argument concerning routine course of conduct . . . They say that on random occasions checks may have been endorsed up front, before sending to the Federal Reserve, but they don't say that was a routine course of practice, and they don't provide any information as to how often or how regularly the endorsement was put on ahead of time. Without that, the key fact the Plaintiff has to establish is simply not arguable. There is no genuine issue on it, and the ruling should be as I indicated before.

The order on summary judgment was subsequently amended to provide that the judgment was final, even though multiple parties were involved. CR 54(b). This appeal followed.

█ It is axiomatic that an action for negligence does not lie unless the defendant owes a duty of care to the plaintiff. *Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990). Charter suggests two potential sources of duty in this case; Washington's version of the Uniform Commercial Code, RCW Title 62A, and the parties' prior course of dealing. Each is analyzed below.

I

Washington's version of the Uniform Commercial Code, codified in RCW Title 62A, contains two relevant statutes: RCW 62A.4-205(1) and RCW 62A.4-202. Neither of these creates an affirmative duty to supply missing endorsements on checks presented for deposit. RCW 62A.4-205(1) provides:

> A depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words "payee's

indorsement required" . . .. In the absence of such a requirement a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement.

■ By its terms, this statute is clearly permissive. It does not require depositary banks to supply missing endorsements for their customers. Rather, it simply allows banks to supply missing endorsements in order to speed the collection process. *See* Official Comments, RCWA 62A.4-205. Thus, no affirmative duty can be found in this statute. *Total Aviation Servs., Inc. v. United Jersey Bank*, 39 U.C.C. Rep. Serv. 969 (E.D.N.Y. 1984).

RCW 62A.4-202 requires collecting banks to use ordinary care in presenting items for collection. That statute provides:

(1) A collecting bank must use ordinary care in

(a) presenting an item or sending it for presentment; and

(b) sending notice of dishonor or non-payment or returning an item other than a documentary draft to the bank's transferor or directly to the depositary bank under subsection (2) of RCW 62A.4-212 after learning that the item has not been paid or accepted, as the case may be; and

(c) settling for an item when the bank receives final settlement; and

(d) making or providing for any necessary protest; and

(e) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

. . . .

(3) Subject to subsection (1)(a) a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank or person or for loss or destruction of an item in transit or in the possession of others.

■ We decline to read a duty to supply missing endorsements into this statute. As the trial judge pointed out, given the permissive language contained in RCW 62A.4-205, it would be illogical to interpret the requirement of ordinary care contained in this statute as creating a duty to supply missing endorsements. The Legislature would not have intended to make the same act mandatory in RCW 62A.4-202 that it expressly stated was permissive in RCW 62A.4-205.

■ Moreover, the entire statutory scheme of U.C.C. Article 4, codified at RCW 62A.4, manifests a clear legislative intent to allocate the risk of loss to the owner of the check during the collection process. J. White & R. Summers, *Uniform Commercial Code* § 16-6, at 805-06 (1988). Official Comment 4 to RCW 62A.4-201 expressly states that the risk of loss concerning the check continues to remain with the owner after the check is deposited and RCW 62A.4-212 allows the collecting bank to charge back the amount of the provisional credit if the check presented for collection is not honored. To hold banks liable for not supplying missing endorsements would create a major change in the statutory risk allocation scheme through the back door of negligence law.

There are also sound policy reasons for not judicially imposing such a duty upon depositary banks. It is a well known principle of tort law that the risk of loss should be borne by the one who can most economically avoid the loss. *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947) (Learned Hand, J.); Calebresi, *The Costs of Accidents, A Legal and Economic Analysis* (1970); Posner, *A Theory of Negligence*, 1 J. Legal Stud. 29 (1972-1973). As Oliver Wendell Holmes wrote almost 100 years ago: "[T]he safest way to secure care is to throw the risk upon the person who decides what precautions shall be taken." O. Holmes, *The Common Law*, Lecture III, at 93 (DeWolf ed. 1963).

In this case, Charter was clearly in the best position to take the precautions necessary to prevent the loss. All it had to do was to look twice for proper endorsements before depositing its checks — hardly a burdensome task. On the other hand, imposing a duty on depositary banks to find all missing endorsements would be extremely costly for the banks and would ultimately diminish the efficiency of the check collecting system as a whole.

## II

Charter vigorously contends that Northwest's practice of supplying missing endorsements created an affirmative duty on which it was entitled to rely. While Charter cites no

case that has so held, at least one court has speculated that such a duty could arise from a prior course of dealing between the parties. *See Total Aviation Servs., Inc. v. United Jersey Bank*, 39 U.C.C. Rep. Serv. 969 (E.D.N.Y. 1984). In addition, Prosser states that the "idea of voluntary assumption of a duty by affirmative conduct runs through a variety of cases." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 56, at 379 (5th ed. 1984). The primary policy behind the rule is that the injured party may rely on the conduct to its detriment. *See Prosser and Keeton on Torts*, at 380.

For the purposes of this case we assume without holding that a duty to supply missing endorsements could arise from the prior course of dealing between the parties. However, we agree with the court below that Charter has not raised a genuine issue for trial.[1]

■ ■ We consider the evidence and all reasonable inferences therefrom in the light most favorable to Charter, as we are required to do when reviewing a motion for summary judgment, *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Even assuming Charter Title raised a factual issue as to the existence of a routine course of dealing, there is simply no reasonable inference, on the record before us, that Charter relied on that course of dealing in any way. Indeed, the only reasonable inference is that Charter was barely conscious of the practice until the occurrence of these unfortunate events.[2] Without such reliance,

---

[1]Charter also contends that Northwest had a duty to notify it as soon as the missing endorsement was discovered. However, Charter did not present a shred of evidence that notification would have prevented the loss. Therefore, there is no need to consider whether such a duty existed or whether it was breached.

[2]Charter also presented evidence that Northwest Bank's employee operations manual admonishes tellers to inspect all checks for proper endorsements before accepting them for deposit. Charter contends that based upon this requirement in the manual, Northwest Bank owes an affirmative duty of care to ensure its customers' checks are not deposited without proper endorsement. However, the manual is no more than a statement of internal policy. Charter presented no evidence to show that the requirement in the manual was held out to the public to induce reliance nor was there any evidence to show that Charter was even

the asserted course of dealing cannot give rise to a legal duty of care. *See Prosser and Keeton on Torts, supra.*
   Affirmed.

SEINFELD, J., and COX, J. Pro Tem., concur.

aware of the requirement in the manual. While we agree with Charter that the manual shows that Northwest was aware of the risks involved with sending unendorsed checks through the collections process, we disagree that it manifests any intention on the part of Northwest to assume those risks.