[No. 3531–0–III. Division Three. July 29, 1980.]

WILLIAM L. RILEY, ET AL, *Appellants,* v. BURLINGTON NORTHERN, INC., ET AL, *Respondents.*

*Michael W. Leavitt, John Gavin,* and *Gavin, Robinson, Kendrick, Redman & Mays,* for appellants.

*Robert D. Williams, Jeffrey C. Sullivan, Prosecuting Attorney,* and *James E. Davis, Deputy,* for respondents.

GREEN, C.J.—Plaintiffs sued Burlington Northern, Inc., and Yakima County for personal injuries allegedly caused by the negligent design of a railroad crossing and the alleged failure to adequately signalize the crossing. A summary judgment dismissing the complaint as to the County was entered. Plaintiffs appeal.

One issue is presented: Was the County's decision not to use warning devices other than the standard railroad crossing sign a discretionary decision and, therefore, one for which the County is immune from tort liability?

Plaintiff, William Riley, was a passenger in a car driven by Richard Baker when it was struck by a train on August 17, 1976. At the time of the accident, the car driven by Mr.

Baker was westbound on Second Avenue in Parker, Washington. The train was southbound. The crossing was marked by a standard nonmechanical railroad approach warning sign and a standard sawbuck railroad warning sign. Plaintiffs brought this action against Yakima County and Burlington Northern Railroad, claiming that Mr. Riley's injuries were the result of the defendants' negligence. Yakima County responded by successfully moving for summary judgment.

In opposition to the motion for summary judgment, plaintiff filed the affidavit of G. R. Cysewski, a civil engineer. Mr. Cysewski stated:

> In my professional opinion, several hazardous conditions existed at the time of this accident which contributed to making this a hazardous and dangerous crossing and contributed to causing the accident. One of the hazardous conditions at this particular crossing is the method of signing used to warn the public traveling over the crossing. The peculiar conditions encountered at this crossing, particularly the skewed angle, multiple tracks with some separated by some distance, elevated tracks, corner–sight triangle obscurity, a spur track at a different angle to the railroad and mainline tracks, and a stop bar located only at the spur track, which is over 50 feet from the other tracks, present a situation requiring careful and proper signing and it is my opinion the signing of the crossing at the time of the accident was inadequate to properly alert and warn highway users and is not consistent with nationally established standards for either skewed crossings or corner–sight–triangle obscured crossings.

The County took the position that under RCW 36.86.040,[1] it is only required to install and maintain standard, nonmechanical railroad approach warning signs along county roads on both sides of a railroad grade crossing. Since these signs were installed, the County contends it was

---

[1]RCW 36.86.040 states: "In respect to existing and future railroad grade crossings over county roads the board [of county commissioners] shall be required to install and maintain standard, nonmechanical railroad approach warning signs on both sides of the railroad upon the approaches of the county road."

not negligent. In any event, the County argues the sole cause of the accident was Mr. Baker's failure to maintain a proper lookout. Further, the County asserts that whether the public safety requires a more sophisticated warning device at the Parker railroad crossing was a discretionary determination and an exception to the abrogation of governmental tort immunity. RCW 4.96.010.[2] The trial court, recognizing that issues of fact otherwise existed, determined that the question of installing signals or other more sophisticated warning devices at a particular crossing was a discretionary decision. Consequently, the County was immune from tort liability. On that sole ground, plaintiffs' action was dismissed. We reverse.

■ Discretionary governmental immunity in this state is an extremely limited exception. *Stewart v. State,* 92 Wn.2d 285, 293, 597 P.2d 101 (1979); *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 254, 407 P.2d 440 (1965).

In *Evangelical,* at page 255, the court recognized that certain acts, omissions or decisions as a matter of policy should not subject the governmental unit to potential liability. It held, however, that before a particular act, omission or decision may come within this exception, affirmative answers must be given to four questions:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy . . . as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act . . . require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite . . . authority . . .

---

[2]RCW 4.96.010 provides: "All political subdivisions . . . whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: . . ."

Only if all four questions are clearly and unequivocally answered in the affirmative, can the act, omission or decision be classified as a discretionary governmental process. There, a 14–year–old boy escaped from a state juvenile correction facility employing minimal security measures and burned down a church and a home. In the resulting property owners' action against the State, the court held that the operation of the facility by maintaining and assigning the boy to an open program was in accordance with basic state policy to rehabilitate rather than punish delinquent youths. Consequently, the decision was discretionary and the State was immune from tort liability.

Recently, in *Stewart v. State, supra,* the court considered the exception in relation to allegations of negligent design of the lighting system and the approach to a highway bridge. *Stewart,* at page 294, held that the negligent design of the lighting system and approach to the bridge were not essential to the accomplishment of any basic policy, program, or objective of the State. Consequently, the State was not immune from tort liability under *Evangelical.* The issue of negligence in the lighting and the approach to the bridge was for the jury. As a result, a jury instruction that the State could not be held negligent for the design of and the lighting of the approach to the bridge was error. A new trial was granted.

Here, Yakima County's contention and the trial court's determination that the posting of additional signals or other more sophisticated warning devices is a discretionary act immunizing it from liability must be considered in light of these decisions and the criteria in *Evangelical.* Their position rests upon the affidavit of Louis Haff, assistant director of public works and county engineer for Yakima County. Mr. Haff stated that in 1974 his department was notified that the State Highway Commission had monies available to improve railroad grade crossings and it prepared a list of eligible crossings. The Parker grade crossing was not included on the list. Yakima County reviewed the accident histories of all crossings in the county and decided

to seek funding of only those on the State's list. In reaching this decision, the County considered the amount of money to be allocated and determined not to improve the Parker crossing because other crossings had higher traffic counts, serious obstructions to view, serious accident histories and topographical problems. Moreover, he stated, they had complied with RCW 36.86.040 by having the nonmechanical railroad approach warning signs and the sawbuck signs.

Mr. Haff also pointed out that further signalization improvement of railroad grade crossings was governed by RCW 81.53.261. Under that statute,

> Whenever the director of highways or the governing body of any . . . county, or any railroad company . . . shall deem that the public safety requires signals or other warning devices, other than sawbuck signs . . .

it -shall file a petition in writing with the Utilities and Transportation Commission. He states that the County, in determining whether such petition should be filed for the public safety, considers the details of any accidents to determine what alternatives are available to solve the problem, *i.e.,* reduced speed, stop signs or use of an overpass or underpass.

Based on this affidavit, the County argues that all of the *Evangelical* criteria must be answered in the affirmative. Therefore, it asserts the decision not to further signalize the Parker crossing or petition the Utilities and Transportation Commission to do so was a discretionary decision. The County contends this decision involved a basic governmental policy, program or objective in allocating limited resources among a virtually unlimited array of needs; therefore, criterion No. 1 is satisfied.

This court fully appreciates the problem of allocating limited resources. However, under the facts of this case, we do not find the decision to be of the basic policy type recognized in *Evangelical.* Here, the decision is more akin to the one involved in *Stewart v. State, supra.* There, the court held that the decision as to the lighting and

approach to a highway bridge did not involve a discretionary act. The court stated at page 294:

> The decisions to build the freeway, to place it in this particular location so as to necessitate crossing the river, the number of lanes—these elements involve a basic governmental policy, program or objective. However, these are not the elements which are challenged by appellant. Rather, appellant argues that once those governmental decisions were made they had to be carried out without negligent design of the bridge or of the lighting system. Negligent design was not essential to the accomplishment of the policy, program or objective.

The County argues that *Stewart* was a design case; whereas, this case involves a warning sign. We disagree. Mr. Cysewski's affidavit indicates a hazardous crossing was created by the angle at which the road approaches the railroad track. This was a design problem presenting a factual issue. Consequently, we find the discussion in *Stewart* pertinent.

The County also contends it could not make the improvement without approval of the Utilities and Transportation Commission under RCW 81.53.261. Assuming this is true, the County never deemed "that the public safety" required it to seek approval. Whether it should have done so is still an issue of fact. Moreover, the statute does not state that a petition is the only method by which the improvement can be made. In fact, the statute authorizes the governmental body and the railroad to do so by agreement.[3]

Accordingly, we hold that the trial court erred when it held that the County was immune from tort liability. Because there exist genuine issues of material fact with

---

[3] RCW 81.53.261 states: "Nothing in this section shall be deemed to foreclose the right of the interested parties to enter into an agreement, franchise or permit arrangement providing for the installation of signals or other warning devices at any such crossing or for the apportionment of the cost of installation and maintenance thereof, or compliance with an existing agreement, franchise or permit arrangement providing for the same."

respect to negligence and proximate cause, the order granting summary judgment is reversed.[4]

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied August 19, 1980.

Review denied by Supreme Court November 7, 1980.

---

[4]It should be noted that ordinary rules of negligence have been generally applied in cases involving questions of the adequacy of road signs. *See Kitt v. Yakima County,* 93 Wn.2d 670, 611 P.2d 1234 (1980); *Boeing Co. v. State,* 89 Wn.2d 443, 572 P.2d 8 (1978); *Schneider v. Yakima County,* 65 Wn.2d 352, 397 P.2d 411 (1964); *Tanguma v. Yakima County,* 18 Wn. App. 555, 569 P.2d 1225 (1977).