273 P.3d 477 (2012)
Flor AVELLANEDA and Alvaro Avellaneda, husband and wife, and the marital community composed thereof, Appellants,
v.
STATE of Washington, Respondent.
No. 41060-5-II.
Court of Appeals of Washington, Division 2.
March 27, 2012.
*478 Eugene Nelson Bolin, Jr., Law Offices of Eugene N. Bolin, Jr., Edmonds, WA, for Appellants.
Garth Ahearn, Office of the Attorney General-Tacoma, Tacoma, WA, for Respondent.
WORSWICK, J.
¶ 1 Flor Avellaneda was seriously injured when two cars crossed the median on state route (SR) 512 and one of them struck her car. Flor[1] and her husband, Alvaro Avellaneda, sued the State, alleging that the Washington State Department of Transportation (WSDOT) negligently failed to timely install a barrier on the SR 512 median. The trial court granted summary judgment in favor of the State on the basis of discretionary immunity. The Avellanedas appeal, arguing (1) the State was not entitled to discretionary immunity and (2) genuine issues of material fact precluded summary judgment. We affirm summary judgment.

FACTS
¶ 2 On July 23, 2006, Flor was driving eastbound on SR 512 when two cars going the opposite direction crossed the median and one of them struck her car. Although the WSDOT had planned to install a cable barrier on that median, no barrier was in place at the time of the accident.
¶ 3 In 2001, the Highway Safety Executive Group amended the WSDOT's design manual to recommend installing median barriers on medians less than 50 feet wide. Under RCW 47.05.010, the WSDOT is required to rationally allocate funding based on the relative priority of projects, which the WSDOT implements by formulating a "priority array" of projects for which it seeks funding. CP at 386. To implement the design manual amendment pursuant to this priority programming mandate, the WSDOT distributed guidelines to its regional offices instructing them how to calculate benefit/cost ratios[2] to determine the priority of potential median barrier projects. The WSDOT also distributed a study to each WSDOT region that listed preliminary benefit/cost ratios for potential projects. This study calculated the benefit/cost ratio for the stretch of SR 512 where Flor's accident would occur as zero. The regions were then instructed to refine these benefit/cost ratios based on the characteristics and construction costs of each potential project.
¶ 4 The WSDOT's proposed budget for the 2003-05 biennium did not include a funding request for the SR 512 project because all the projects the WSDOT requested funding for had a benefit/cost ratio of one or greater and the SR 512 project had a benefit/cost ratio of zero. The Transportation Commission reviewed and modified the budget before sending it to the legislature.
¶ 5 In August 2003, the portion of SR 512 where Flor's accident would occur was combined with another stretch of SR 512, giving the combined project a much higher benefit/cost ratio, making it 13th priority on the list of proposed median barrier projects. In April 2004, the WSDOT adjusted the benefit/cost calculations to include collision data from 2001 and 2002, as well as updated cost factors. The new calculation further adjusted the SR 512 project to 9th highest priority.[3]
*479 ¶ 6 It typically takes the WSDOT at least a year to develop its budget for an upcoming biennium. As such, the WSDOT began to formulate its budget for the 2005-07 biennium in the fall of 2003. In September 2004, the WSDOT submitted its proposed budget, which included the SR 512 project, for the governor to review. At the end of April 2005, the legislature passed the budget appropriation for the WSDOT's funding request.
¶ 7 For efficiency, the WSDOT combined the SR 512 project with a median barrier project on United States route (US) 101. The design process for this project began December 5, 2005, after necessary project approvals were granted. The project was given an "advertisement date," the date it was to be submitted to the public for bids, of May 15, 2006. CP at 85 But an unforeseen sloping issue required additional design time, causing the WSDOT to push the project's advertisement date to July 17.
¶ 8 Bids were due by August 16, and the WSDOT had 45 days to review the bid documents and award the contract. The WSDOT awarded the winning bid on August 21, and the winning bidder had up to 20 days to execute the contract. The winning bidder executed the contract on September 8. The winning bidder then had 90 days to acquire the materials necessary for the project. The winning bidder commenced construction of the U.S. 101 portion of the project on December 11. Work commenced on the SR 512 barrier in February 2007 and was substantially completed by March 30.
¶ 9 The Avellanedas sued the State, alleging that the WSDOT negligently delayed constructing a cable barrier on SR 512, which would have prevented the crash. The State moved for summary judgment on the Avellanedas' claims. The trial court ruled that there were genuine issues of material fact whether the accident would have occurred with the cable barrier in place. But the trial court further ruled that the State was entitled to discretionary immunity for its timing of the project. The Avellanedas appeal.

ANALYSIS

I. STANDARD OF REVIEW
¶ 10 We review a grant of summary judgment de novo. Briggs v. Nova Servs., 166 Wash.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the nonmoving party, the court finds no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Briggs, 166 Wash.2d at 801, 213 P.3d 910. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wash.2d 545, 552, 192 P.3d 886 (2008).

II. DISCRETIONARY IMMUNITY
¶ 11 The Avellanedas first argue that the trial court erred by granting summary judgment to the State under the doctrine of discretionary immunity. This argument presents two questions. First, was the decision whether to include the SR 512 project in the WSDOT's priority array entitled to discretionary immunity? And second, are there genuine issues of fact whether the WSDOT negligently delayed the implementation of the SR 512 project once it was funded? We hold that the decision to exclude SR 512 from the priority array was entitled to discretionary immunity and that there is no genuine issue whether the WSDOT negligently delayed the project's implementation.[4]

*480 A. The Evangelical Test
¶ 12 Our Supreme Court set forth the test for discretionary immunity in Evangelical United Brethren Church of Adna v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). The Evangelical court noted that "in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability." 67 Wash.2d at 254, 407 P.2d 440. In other words, "`it is not a tort for government to govern.'" 67 Wash.2d at 253, 407 P.2d 440 (quoting Dalehite v. United States, 346 U.S. 15, 57, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (Jackson, J., dissenting)).
¶ 13 Holding that it is necessary to draw the line between "truly discretionary and other executive and administrative processes," the Evangelical court announced a four-factor test to determine when discretionary immunity applies:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?
67 Wash.2d at 255, 407 P.2d 440. The court held, "If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." 67 Wash.2d at 255, 407 P.2d 440. The court further held that the question of discretionary immunity "should present a question of law, although in some instances it may well give rise to a mixed question of law and fact." 67 Wash.2d at 253, 407 P.2d 440.
¶ 14 Our Supreme Court has also held that discretionary immunity is a narrow doctrine, limited to "discretionary" acts, not "ministerial" or "operational" ones. Taggart v. State, 118 Wash.2d 195, 214-15, 822 P.2d 243 (1992). In order for a decision to qualify as discretionary, the State must show that the decision was the outcome of a conscious balancing of risks and advantages. Taggart, 118 Wash.2d at 214-15, 822 P.2d 243. And the decision must be a basic policy decision by a high-level executive. Taggart, 118 Wash.2d at 215, 822 P.2d 243.

B. Discretionary Nature of the Priority Array Decision
¶ 15 The first question we must answer is whether the decision to exclude SR 512 from the budgetary priority array was entitled to discretionary immunity. Washington courts have not directly addressed whether a decision to include or exclude a project from the priority array constitutes a discretionary decision. We hold that the decision here was, because the decision satisfied the tests set forth in Evangelical and its progeny and because applying discretionary immunity to this type of decision safeguards the separation of powers.

1. Application of Evangelical and Progeny
¶ 16 RCW 47.05.010 recognizes that limited revenues prevent the State from satisfying all transportation needs and that "[d]ifficult investment trade-offs will be required." The statute mandates a "priority programming" system based on "the rational selection of projects and services according to factual need and an evaluation of life cycle costs and benefits that are systematically scheduled to carry out defined objectives within available revenue." RCW 47.05.010. The WSDOT complies with this priority programming mandate by generating a priority array of projects for which it requests funding. To formulate the priority array at issue here, each WSDOT region developed a list of proposed *481 projects based on cost/benefit ratios. These lists were forwarded to WSDOT headquarters for consideration as part of the overall budget, which the Transportation Commission reviewed before it was submitted to the legislature.
¶ 17 Our Supreme Court addressed the Evangelical factors in Stewart v. State, 92 Wash.2d 285, 597 P.2d 101 (1979). There, the court addressed the claim that the State had negligently designed a section of freeway and the accompanying lighting system where an accident occurred. 92 Wash.2d at 292, 294, 597 P.2d 101. The court acknowledged that decisions such as those to build the freeway, to decide its location, and to decide the number of lanes, are essential to a basic government policy, program, or objective, satisfying the first and second Evangelical factors. 92 Wash.2d at 294, 597 P.2d 101. But the court held that negligently designing the freeway and its lighting system was not essential to such a basic policy, program, or objective. 92 Wash.2d at 294, 597 P.2d 101. In other words, while a decision may be protected by discretionary immunity, its negligent implementation will not be, as negligent implementation is never essential to a basic policy, program, or objective. See also Riley v. Burlington Northern, Inc., 27 Wash. App. 11, 17-18, 615 P.2d 516 (1980) (failing to place adequate signs at railroad crossing was analogous to negligent freeway design in Stewart and not protected by discretionary immunity).
¶ 18 The first Evangelical factor, that the decision necessarily involves a basic governmental policy, program, or objective, is unequivocally satisfied here. RCW 47.05.010 expresses the basic policy that highway funding decisions should be based on the rational selection of projects, evaluating the costs and benefits, leading to difficult trade offs. The decision determining the SR 512 project's priority was at least as basic as the decision to build a single freeway, recognized in Stewart as satisfying the first Evangelical factor. 92 Wash.2d at 294, 597 P.2d 101.
¶ 19 The second factor, that the decision is essential to the realization or accomplishment of that policy, program, or objective, is satisfied as well. The priority array embodies the basic policy underlying RCW 47.05.010 and is essential to its realization. The record reflects that the WSDOT promulgated and followed guidelines for systematically ranking median barrier projects according to their benefit/cost ratios. Such systematic ranking was indispensible for the State to comply with RCW 47.05.010.
¶ 20 The third factor, that the decision requires the exercise of basic policy evaluation, judgment, and expertise, is also satisfied. Here, the WSDOT was required to collect data about accident history and the cost of possible median barrier projects, and to devise a system to analyze the data and rank potential projects. This required a great deal of basic policy evaluation, judgment, and expertise.
¶ 21 Finally, the fourth factor, that the WSDOT possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision, is satisfied. It is undisputed that the WSDOT had the requisite authority and duty to formulate the priority array as it did here.
¶ 22 As such, formulating the priority array here unequivocally satisfied all four Evangelical factors. Moreover, the Transportation Commission reviewed, modified, and finalized the prioritized median barrier projects as part of the final WSDOT budget. The ultimate decision regarding the funding of projects in the priority array thus rested with a high-level executive body; it was not an operational-level decision.
¶ 23 Furthermore, the WSDOT showed that its decision here was the outcome of a conscious balancing of risks and advantages. The record contains the guidelines WSDOT used to calculate the priority of projects, as well as declarations by WSDOT employees that higher priority projects were selected first. The Avellanedas submitted no evidence to the contrary. Accordingly, there is no genuine issue of material fact whether the WSDOT consciously balanced the risks and advantages of selecting the projects to fund. Because the priority programming decision excluding the SR 512 project satisfied the tests set forth in Evangelical and its progeny, *482 this decision was entitled to discretionary immunity.
¶ 24 The Avellanedas argue to the contrary that the WSDOT's decision to assign the SR 512 project an initial benefit/cost ratio of zero was ministerial and thus not subject to discretionary immunity. But accepting this characterization would contravene past precedent of this court.
¶ 25 We rejected a similar theory in Jenson v. Scribner, 57 Wash.App. 478, 482-83, 789 P.2d 306 (1990). There, we considered the Jensons' claim that the State had negligently failed to install a median barrier on SR 3. 57 Wash.App. at 479, 789 P.2d 306. The Jensons argued that the State was liable for calculating the project's priority based on crash data collected every two years. 57 Wash.App. at 482-83, 789 P.2d 306. They argued that if the State had collected data annually, the project would have had a higher priority. 57 Wash.App. at 483, 789 P.2d 306. We held that data collection was part of the decision-making process, not part of implementation, making it a discretionary act entitled to immunity. 57 Wash.App. at 483, 789 P.2d 306.
¶ 26 So too here, the calculation of the SR 512 project's benefit/cost ratio was part of the decision-making process going into formulating the priority array. Like the decision as to how often to collect crash data, the WSDOT's benefit/cost calculations here involved the application of "basic policy evaluation, judgment, and expertise." Evangelical, 67 Wash.2d at 255, 407 P.2d 440. We hold that just as the ultimate decision not to include SR 512 on the priority array, the particular benefit/cost calculation that gave SR 512 a ratio of zero was protected by discretionary immunity.[5]

2. Separation of Powers
¶ 27 The doctrine of separation of powers further supports this conclusion. In McCluskey v. Handorff-Sherman, 125 Wash.2d 1, 12-13, 882 P.2d 157 (1994), our Supreme Court "outline[d] the analysis" for whether discretionary immunity applies to priority programming decisions by citing several out-of-state cases relevant to the issue. But the court declined to actually decide the issue because the State abandoned it at trial. McCluskey, 125 Wash.2d at 13, 882 P.2d 157.
¶ 28 McCluskey cited Julius Rothschild & Co. v. State, 66 Haw. 76, 655 P.2d 877 (Haw. 1982). 125 Wash.2d at 13, 882 P.2d 157. There, the Supreme Court of Hawaii addressed whether the state could be held liable for failing to reconstruct or replace a bridge to comply with modern building standards that were more rigorous than those in place when the bridge was built. 655 P.2d at 879-80. The court applied a rule similar to Washington's, noting that Hawaii holds discretionary government decisions immune from tort liability, but not operational level decisions. 655 P.2d at 880-81. The court had "no difficulty" in holding that the decision whether to reconstruct or replace the bridge involved the evaluation of "broad policy factors," immunizing the decision from judicial review. 655 P.2d at 881. The court found it important to "`[recognize] the separate powers and functions of the legislative and executive branches of state government and [protect] them from any attempted disturbance through the courts.'" 655 P.2d at 881 (quoting Breed v. Shaner, 57 Haw. 656, 562 P.2d 436, 442 (Haw.1977)).
¶ 29 McCluskey also cited Industrial Indemnity Co. v. State, 669 P.2d 561 (Alaska 1983). 125 Wash.2d at 13, 882 P.2d 157. There, the Supreme Court of Alaska addressed whether the state could be held liable for failing to install a highway guardrail. *483 669 P.2d at 562. Again, the court applied a similar standard to that followed in Washington, asking whether the decision not to install a guardrail was a "planning level" decision, entitled to immunity, or an "operational level" one. 669 P.2d at 563. In applying this test, the court held that the principal policy underlying the discretionary immunity doctrine is "to limit judicial re-examination of decisions properly entrusted to other branches of government." 669 P.2d at 563. It also noted that courts should not intrude into matters of policy that exceed their institutional competence. 669 P.2d at 563. The court held that because the decision whether to install a guardrail involved "planning, an assessment of competing priorities, and a weighing of budgetary consideration," the state's failure to install the guardrail was immune from tort liability. 669 P.2d at 564-65.
¶ 30 Both Julius Rothschild and Industrial Indemnity are convincing. As both of those cases noted, judicial intrusion into the difficult balancing of planning, policy, and budget trenches on the authority of both the executive and legislative branches. And as noted in Industrial Indemnity, it is poor public policy for the courts to extend their influence into matters beyond their institutional competence. We are not equipped with the resources or expertise to second-guess the legislature's funding decisions or the minutiae of the WSDOT's planning decisions and we decline to do so.
¶ 31 Moreover, the separation of powers concerns reflected in Julius Rothschild and Industrial Indemnity are consistent with those expressed by the Washington Supreme Court under other circumstances. In general, Washington courts hold that the separation of powers doctrine is violated when the activity of one branch threatens the independence or integrity or invades the prerogative of another. Waples v. Yi, 169 Wash.2d 152, 158, 234 P.3d 187 (2010) (quoting Putman v. Wenatchee Valley Med. Ctr., 166 Wash.2d 974, 980, 216 P.3d 374 (2009)). And in SEIU Healthcare 775NW v. Gregoire, the Supreme Court held that "[d]eciding the allocation of limited state funds" in drafting a budget proposal is an essential policy decision that is political by nature and within the prerogative of the executive. 168 Wash.2d 593, 600, 229 P.3d 774 (2010) (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803)). The court moreover recognized that "the recent severe economic difficulties faced by our state present circumstances dictating. . . judicial restraint" on budgetary matters. 168 Wash.2d at 601, 229 P.3d 774.
¶ 32 The Avellanedas ask us to invade the executive prerogative by permitting them to recover in tort based on the WSDOT's decisions in drafting the budget proposal that excluded funding for the SR 512 project. Such a result would violate the separation of powers by injecting our court into the budget process after the fact. We decline to commit such judicial overreach by assigning potential liability to a budgetary decision properly within the WSDOT's purview.

C. Delay in Implementation
¶ 33 The Avellanedas also argue that there are genuine issues of material fact whether the WSDOT negligently implemented the SR 512 project by unreasonably delaying it. We disagree because there is no evidence of an unreasonable delay.
¶ 34 While the decision whether to include a project on the priority array is entitled to discretionary immunity, negligent implementation of that decision may still be the basis for tort liability. In Jenson, the plaintiffs conceded that the State's decision whether to include a median barrier project on the priority array was a discretionary decision but they argued that the State could be held liable for negligently implementing that decision after funding became available. 57 Wash.App. at 481, 789 P.2d 306. We agreed, noting that discretionary immunity does not apply to the negligent implementation of discretionary decisions. 57 Wash.App. at 481, 789 P.2d 306 (citing Stewart, 92 Wash.2d at 294-95, 597 P.2d 101).
¶ 35 However, in Jenson we did not find any genuine issue of material fact on the issue of negligent implementation. 57 Wash. App. at 482, 789 P.2d 306. We noted that funds were authorized for planning the SR 3 barrier project in the 1981-83 biennium, funds for the project itself were authorized in *484 the 1983-85 biennium, and the project was completed by August 1983. 57 Wash.App. at 482, 789 P.2d 306. We held that under these circumstances, there was no genuine issue of fact whether the State unreasonably delayed the SR 3 median project. 57 Wash.App. at 482, 789 P.2d 306.
¶ 36 So too here, the record reflects no unreasonable delay in the construction of the SR 512 median barrier project. As we set out above, the WSDOT sought funding for, designed, advertised, and built the project. The record does not show any unexplained periods of inactivity on the project.
¶ 37 To the contrary, the Avellanedas argue that the project was first ranked 13th on the priority array, but it was then reassigned a benefit/cost ratio of zero and removed from the array, leading to a two-year delay. But the record reflects that the portion of SR 512 where Flor's accident occurred was initially given a benefit/cost ratio of zero. This benefit/cost ratio was only adjusted after the State combined the project with another stretch of SR 512 that had a higher benefit/cost ratio. Moreover, as we noted above, the calculation of benefit/cost ratios is part of the decision-making process and is subject to discretionary immunity. By analogy to Jenson, a genuine issue of fact on the calculation of the benefit/cost ratio would not be material to the State's liability and thus would not preclude summary judgment.
¶ 38 The Avellanedas further argue that the SR 512 project was negligently delayed because the WSDOT failed to request funding for it in a series of supplemental funding requests made during the 2001-03 biennium. But the decision whether to request supplemental funding is yet another part of the discretionary process involved in prioritizing highway projects and is again subject to discretionary immunity.
¶ 39 The Avellanedas finally argue that the WSDOT negligently failed to start the SR 512 project as soon as funding became available and negligently delayed the project during its construction. However, there are no facts in the record to suggest that the WSDOT's timing of the project was negligent. The Avellanedas argue that other, lower-ranked projects were completed before the SR 512 project, showing a negligent delay. But the Avellanedas fail to cite the record on this point, and our review of the record reveals no support for their assertion. Based on the record before us, reasonable minds could conclude only that there was no unreasonable delay in the implementation of the SR 512 project. Accordingly, there is no genuine issue of fact on this point and the Avellanedas' arguments fail.
¶ 40 Affirmed.
We concur: PENOYAR, C.J., and VAN DEREN, J.
NOTES
[1] Because Flor and Alvaro Avellaneda share the same last name, we refer to Flor by her first name, intending no disrespect.
[2] The WSDOT's benefit/cost ratios were obtained by dividing the projected benefit of a project by its projected cost, with a higher ratio corresponding to more benefit for the cost.
[3] According to the Avellanedas, the only evidence in the record of the SR 512 project's change in benefit/cost ratios is a declaration by the State's counsel. This is incorrect. The record contains declarations by WSDOT employees concerning the project's successive benefit/cost ratios, not merely counsel for the State.
[4] In reaching this conclusion, we leave undecided whether the State had a duty to exercise reasonable care in deciding whether to upgrade SR 512 with a median barrier. The State contends that there is no duty to upgrade existing, safe roads to conform to modern design standards. We agree, per Ruff v. King County, 125 Wash.2d 697, 705, 887 P.2d 886 (1995), that there is generally no such duty. But the parties did not address whether the design manual amendment created a duty for the State to exercise reasonable care in deciding where to place median barriers. The issue was not adequately briefed before us and we do not consider it. Holland v. City of Tacoma, 90 Wash.App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."); Melville v. State, 115 Wash.2d 34, 39-40, 793 P.2d 952 (1990) (court declined to address whether duty arose from internal agency policy where issue was not adequately briefed).
[5] Furthermore, there is no evidence in the record that the WSDOT was negligent in determining that the SR 512 project had a benefit/cost ratio of zero. The Avellanedas imply that the State wrongfully withheld discovery on this issue, but they do not assign error on this basis. "It is well settled that a party's failure to assign error to or provide argument and citation to authority in support of an assignment of error, as required under RAP 10.3, precludes appellate consideration of an alleged error." Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wash.App. 183, 190 n. 4, 69 P.3d 895 (2003). Moreover, the Avellanedas did not move below to continue the summary judgment motion to allow them to conduct additional discovery under CR 56(f). Failure to request a continuance under CR 56(f) waives the issue. Guile v. Ballard Cmty. Hosp., 70 Wash.App. 18, 24-25, 851 P.2d 689 (1993).