IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35975-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE ANTONIO CONTRERAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — On appeal, Jose Contreras challenges his conviction for first degree

arson on the basis of prosecutorial misconduct and ineffective assistance of counsel. We

reject his contentions and affirm his convictions. We remand, however, for the striking

of the criminal filing fee and DNA collection fee legal financial obligations.

FACTS

This prosecution arises out of the burning of the front door of Jose Contreras'

apartment complex neighbors by Contreras. Tim Navarro resides at a Kennewick

apartment with his father, fiancée, and his three children. Jose Contreras resides in

another apartment directly across the way from Navarro.

At 3:00 a.m. on October 14, 2017, Tim Navarro awoke to someone loudly and aggressively knocking on his apartment door. Navarro ran to the door, looked through the peephole, and saw his neighbor, Jose Contreras, tampering with the outdoor light near the door. Navarro asked his fiancée to call the police while he continued to surveil Contreras through the peephole.

Tim Navarro watched as Jose Contreras acted bizarrely and as if Contreras was high on methamphetamine. Navarro saw and smelled smoke. Kennewick Police Officer Cory McGee arrived at the apartment complex. Officer McGee saw a fire near Navarro's front door and a male standing near the door of Navarro's apartment staring at the flames. According to Officer McGee, the flames climbed four feet high along the door of Navarro's apartment.

Officer Cory McGee identified himself as a police officer and inquired from Jose Contreras about his activities. Contreras turned toward Officer McGee, produced a large kitchen knife, and stated: "'Who the f*** are you?'" Report of Proceedings (RP) at 125. McGee again identified himself as a police officer. Contreras walked toward Officer McGee with the knife pointed at McGee. McGee drew his gun and warned Contreras that he would shoot if Contreras took any more steps forward.

Officer James Scott arrived at the apartment complex and noticed Jose Contreras acting aggressively. Contreras held the knife in one hand with his other hand clenched in a fist. He stood in a fighting stance. Contreras retreated into his apartment. The officers

2

extinguished the fire and called for assistance. The fire had burned Navarro's doormat and had charred Navarro's front door and apartment floor.

Kennewick Officer Aaron Hamel responded and surveilled the back of the apartments. Officer Hamel espied Jose Contreras, holding a large knife, on a balcony. Contreras threw objects at Officer Hamel while also repeatedly stabbing, with his knife, the wooden railing on the deck. Hamel identified himself as a police officer and told Contreras to drop the knife. Contreras snarled: "f*** you. I am going to kill all of you." RP at 110.

A SWAT team arrived at the Kennewick apartment complex. The team evacuated Tim Navarro and his family from their apartment via a bedroom window. Eventually the SWAT team gained entry to Contreras' apartment and arrested him. A later toxicology report confirmed the presence of methamphetamine in Contreras' body.

PROCEDURE

The State of Washington charged Jose Contreras with first degree arson. The information alleged that Contreras, while acting knowingly and maliciously, caused a fire that manifestly endangered human life or damaged a dwelling.

At the conclusion of the evidence, the trial court instructed the jury on the elements of first degree arson and, at the request of Jose Contreras, on the elements of first degree reckless burning as a lesser included offense. According to one jury instruction, to convict on the first degree arson charge, the jury had to find beyond

reasonable doubt:

> (1) That on or about October 14, 2017, the defendant caused a fire;
> (2) That the fire
> (a) was manifestly dangerous to human life, or
> (b) damaged a dwelling; and
> (3) That defendant acted knowingly and maliciously; and
> (4) That this act occurred in the State of Washington.

Clerk's Papers (CP) at 60. According to a second jury instruction, to convict on reckless

burning in the first degree, the jury had to find beyond reasonable doubt:

> (1) That on or about October 14, 2017, the defendant caused a fire;
> (2) That the fire damaged a building;
> (3) That the defendant knowingly caused the fire;
> (4) That the defendant recklessly caused the damage; and
> (5) That this act occurred in the State of Washington.

CP at 67. Note the difference in mens rea for the two charges.

During the State's closing argument, the prosecutor stated:

> My colleague is going to talk to you and I will have another chance. But I wanted to say one more thing about the reckless burning option and that is an option and, you know, I think you can consider that. You should consider it.
> But I have to say that if you find the defendant caused the fire—which is pretty straightforward. He definitely damaged a dwelling and that fire was dangerous, manifestly dangerous to human life. I think it would be more intellectually honest for you to just find the defendant not guilty than find him guilty only of reckless burning.
> You know, if you find him guilty, the appropriate charge should be arson in the first degree.

RP at 159. Defense counsel did not object.

4

Defense counsel responded in his closing argument by listing the elements of the crimes, as listed in the jury instructions, of first degree arson and first degree reckless burning.

> And I guess what I am getting at here, what we are looking at, the difference that we are looking at has to do with arson in the first degree, deals with an individual having malicious intent. Malicious intent.
> Reckless burning in the first degree has to do with an individual acting recklessly and damaging a building. So is there a difference between being reckless and causing damage or trying to actually maliciously cause damage?
> There are differences in the law in many situations. Talking about manslaughter and murder. Manslaughter, you can act recklessly. You don't mean to hurt anybody but you are being a fool. You are being an idiot. You are doing something stupid and somebody dies. Manslaughter.
> Murder, you want to kill them. You are intending to. Okay? There is a difference. Talking about intent. Okay?

RP at 164.

During his summation, defense counsel juxtaposed the concept of malicious intent to the facts of the case and underscored that Jose Contreras uttered no threats to Tim Navarro or his family. Contreras never threatened to harm the family or burn the family's apartment. Contreras never declared hatred toward the family and never expressed a wish to cause family members harm. Defense counsel emphasized that Navarro described Contreras as "'[a] crazed man doing things he didn't understand. . . .'" RP at 166, 167. Defense counsel ended his argument:

> This was not a case where the defendant, although admittedly doing this sort of thing was manifestly dangerous to human life. Yeah. Absolutely. Not only just human lives there in B10, but we know it was a

5

four-plex.  Okay?

   Did it damage a dwelling?  It sure did.  But, again, that the defendant had this malicious intent to do what he is accused of doing.  We are asking you to find that the evidence doesn't support arson in the first degree but rather supports the charge of reckless burning in the first degree.  We are asking you that your verdict so reflects.  Thank you.

RP at 168.

The jury declared Jose Contreras guilty of the greater charge, first degree arson. The jury also returned a special verdict that found damages to a dwelling and the setting of a fire manifestly dangerous to human life.

During sentencing, the trial court sentenced Jose Contreras to a mid-range sentence of 100 months' confinement.  The court found Contreras indigent and imposed only mandatory legal financial obligations, including a $200 criminal filing fee and a $100 DNA collection fee.

LAW AND ANALYSIS

Prosecutorial Misconduct

On appeal, Jose Contreras asserts misconduct for statements of the prosecuting attorney during closing argument regarding the lesser included instruction.  Contreras complains of the prosecutor informing the jury that finding Contreras not guilty of any crime, rather than finding him guilty of first degree reckless burning, served intellectual honesty.  Contreras essentially argues that the State's attorney committed misconduct when seeking to deny the accused the benefit of a jury instruction on a lesser included

crime.

Jose Contreras' brief cites no legal authority explaining prosecutorial misconduct when the prosecuting attorney argues against convicting the accused of the lesser included crime. We therefore deny review of this assignment of error. This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012).

## Ineffective Assistance of Counsel

Jose Contreras next contends he received ineffective assistance of counsel due to: (1) counsel's failure to object to the prosecutor's remarks in closing argument, (2) a concession in defense counsel's closing argument that the fire was manifestly dangerous to human life, and (3) counsel's failure to request a voluntary intoxication instruction. We disagree with each contention.

To demonstrate ineffective assistance of counsel, a defendant must make two showings. First, the defendant must show that defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances. Second, a defendant must show that defense counsel's representation prejudiced the defendant. This entails showing a reasonable probability that, except for counsel's unprofessional errors, the result of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251

(1995).

We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). When counsel's conduct can be characterized as legitimate trial strategy or tactics, the performance is not deficient. *State v. Kyllo*, 166 Wn.2d at 863. Competency of counsel is determined based on the entire record below. *State v. McFarland*, 127 Wn.2d at 335.

Jose Contreras first complains that his trial counsel performed deficiently when failing to object to the State's attorney's argument that intellectual honesty required acquitting Contreras of both charges rather than convicting him only of the lesser included charge. As discussed above, the prosecutor's statements did not constitute misconduct so defense counsel was not deficient for failing to object to the remarks.

Jose Contreras next complains that trial counsel conceded that the fire endangered human life and caused damage to a dwelling. He contends his counsel effectively conceded his guilt to first degree arson and thereby withdrew from the jury the consideration of finding Contreras guilty of the lesser included offense of reckless burning.

We agree with Jose Contreras that the right to effective assistance of counsel extends to closing arguments. *State v. Kyllo*, 166 Wn.2d at 870 (2009). Nevertheless, we find no ineffective performance of counsel. Trial counsel aggressively requested that the jury find Contreras not guilty of first degree arson because Contreras lacked any

8

malicious intent. Counsel never conceded guilt of arson. Counsel conceded damage to a

dwelling and endangerment to life because the overwhelming facts supported these

elements of first degree arson. By conceding the obvious, counsel bolstered counsel's

and Contreras's credibility when arguing Contreras lacked malicious intent.

Jose Contreras also asserts deficient performance by trial counsel in that counsel

failed to request a voluntary intoxication instruction. To prevail on the basis that trial

counsel was ineffective for failure to request a jury instruction, the reviewing court must

find that the defendant was entitled to the instruction, that counsel's performance was

deficient in failure to request the instruction, and that the failure to request the instruction

prejudiced the defendant. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007).

A criminal defendant is entitled to a voluntary intoxication instruction only if:

(1) the crime charged has a particular mental state as an element, (2) there is substantial

evidence of drinking or drug use, and (3) the defendant presents evidence that the

drinking or drug use affected his or her ability to acquire the required mental state. *State

v. Gallegos*, 65 Wn. App. 230, 238, 828 P.2d 37 (1992). Contreras fails the first prong

because case law previously foreclosed the ability of using a voluntary intoxication

instruction for first degree arson. *State v. Nelson*, 17 Wn. App. 66, 71-72, 561 P.2d 1093

(1977).

In *State v. Nelson*, the court acknowledged that the arson statute contains the word

"maliciously," but held that the term denotes only a general intent, not a specific mental

state. *State v. Nelson*, 17 Wn. App. at 70. The *Nelson* court found no error when the trial court refused to instruct the jury on voluntary intoxication because the defendant was not entitled to the instruction.

## Criminal Filing Fee

The trial court assessed legal financial obligations at sentencing of a $500 victim penalty assessment fee, the $200 criminal filing fee, and the $100 DNA fee. Although mandatory when imposed, the criminal filing fee and DNA fee are no longer mandatory under new legislation as explained in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

Jose Contreras has previous felony convictions that likely resulted in an earlier DNA collection. He asks that the filing fee and DNA fee be struck. The State also advocates for the fees to be struck. Pursuant to *Ramirez*, we remand for the trial court to strike the two fees. Contreras need not be present at any hearing to strike the two financial obligations.

## Statement of Additional Grounds

Jose Contreras raises five issues in a statement of additional grounds (SAG). But, in contravention of RAP 10.10, Contreras does not inform this court of the nature and occurrence of the alleged errors. Contreras only cites federal statutes and civil court rules to support his contentions, neither of which apply to his case. For example, Contreras cites a civil court rule regarding speedy trial rights. Contreras does not explain, though,

how or why he believes that right was violated. In his third ground, Contreras cites the due process component of the Fifth and Fourteenth Amendments and then cites to civil court rules stating that documents are to be signed and dated. We do not know how those two theories connect and what error Contreras asserts.

In his first additional ground, Contreras cites the Fifth Amendment to the United States Constitution and states that "for due process of law to take effect a crime has to be committed." SAG, ground 1. Contreras then cites to CR 12(b)(6) and highlights that Tim Navarro never filed any complaint for damages against him. Contreras misunderstands that the State's filing of an information against him constitutes the allegation that a crime was committed. The injured party need not file a civil complaint.

In his fourth additional ground, Contreras raises a federal statute dealing with "Conspiracy to interfere with civil rights" and then accuses his appellate counsel of assisting the trial court in "conduct that is in violation of applicable rules of Judicial Conduct. . . ." SAG, ground 4. Contreras discusses ex parte communication, but appellate counsel only represents Contreras on appeal. Another attorney represented Contreras at trial. We do not know how or why appellate counsel would engage in contact with the trial court.

CONCLUSIONS

We affirm Jose Contreras' conviction for first degree arson. We remand to the sentencing court to strike the criminal filing fee and the DNA collection fee. We

No. 35975-1-III
*State v. Contreras*


otherwise affirm Contreras' sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J

_____
Siddoway, J.

12